**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GREBIL AVILA MEDINA,**<br>**Petitioner,**<br>**v.**<br>**TODD BLANCHE, et al.,**<br>**Respondents.** | **NO. 5:26-cv-04292-KS**<br><br>**MEMORANDUM AND ORDER RE: PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2241** |

Before the Court is a Petition for Writ of Habeas Corpus by a Person in Immigration Custody under 28 U.S.C. § 2241 ("Petition") filed by counsel for Petitioner Grebil Avila Medina on July 30, 2026. (Dkt. No. 1.) For the following reasons, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Honduras who entered the United States in 2021 without being inspected or admitted. (Dkt. No. 1 ¶¶ 14-15.) Petitioner has continuously resided in the United States for five years and has no criminal history. (*Id.* ¶ 16.) On April 9, 2026, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") agents near his home and taken to the Desert View Annex Detention Facility in Adelanto, California, where he remains detained. (*Id.* ¶ 17.) Petitioner's standard removal proceedings under 8 U.S.C. § 1229a are ongoing before the Adelanto Immigration Court. (*Id.* ¶ 18.)

On May 13, 2026, Petitioner filed a habeas corpus petition with the Court seeking his immediate release from detention, or alternatively, a bond hearing. (*Id.* ¶ 19; *see Avila Medina v. Todd Blanche*, No. 5:26-cv-02577-KS, Dkt. No. 1 (C.D. Cal.).) On July 6, 2026, the Court ordered that Petitioner be provided with an individualized bond hearing in immigration court within three days. (Dkt. No. 1 ¶ 19; *see Avila Medina*, Dkt. No. 13.) On July 9, 2026, Immigration Judge ("IJ") Steven Marcus held a bond hearing, during which he issued an oral decision denying Petitioner's request for bond after finding Petitioner to be a flight risk. (Dkt. No. 1 ¶ 20.) The IJ denied Petitioner access to an interpreter and denied the bond on the grounds that Petitioner presented a flight risk because Petitioner entered the United States illegally, Petitioner worked without authorization, and Petitioner did not attempt to gain legal status until he was detained by immigration officials. (*Id.* ¶¶ 20-21; *see also* Dkt. No. 1-6 (IJ bond order).) Petitioner reserved his right to appeal. (Dkt. No. 1-6 at 2.) On July 9, 2026, Petitioner's counsel filed an *ex parte* application to enforce the Court's judgment and requested immediate release. (*Avila Medina*, Dkt. No. 15.) On July 29, 2026, the Court denied the *ex parte* application, finding that Petitioner must file a new habeas petition to raise the new claims for relief. (*Id.*, Dkt. No. 18.)

On July 30, 2026, Petitioner's counsel filed the instant Petition seeking his immediate release from detention, or alternatively, a bond hearing. (Dkt. No. 1.) Petitioner's counsel also concurrently filed five exhibits: (1) Petitioner's EOIR Automated Case Information, as of July 30, 2026; (2) Petitioner's birth certificate with a certified English translation; (3) six letters in support Petitioner; (4) Form I-213, Record of Deportable/Inadmissible Alien; and (5) the IJ bond order, dated July 9, 2026. (*See* Dkt. Nos. 1-2 to 1-6.)

On August 7, 2026, Respondents filed an Answer. (Dkt. No. 7.) On August 11, 2026, Petitioner's counsel filed a Reply. (Dkt. No. 9.) On September 1, 2026, Petitioner's counsel filed a notice that the Petition was fully briefed. (Dkt. No. 11.)

\\

On September 14, 2026, after the Court received briefing on this habeas petition, an IJ ordered Petitioner removed, and his appeal is currently pending.[1] Thus, Petitioner does not have a final removal order.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020).

## III. DISCUSSION

The Petition asserts five claims for relief: (1) Petitioner's arrest without a pre-deprivation hearing violated due process (Dkt. No. 1 ¶¶ 30-40); (2) his arrest without a warrant violates 8 U.S.C. § 1226(a) (*id.* ¶¶ 41-49); (3) his ongoing detention violates his due process rights (*id.* ¶¶ 50-57); (4) his July 9, 2026 bond hearing violated due process because he was not provided an interpreter and the IJ's flight risk determination was erroneous (*id.* ¶¶ 58-65); and (5) his detention violates the Administrative Procedure Act (*id.* ¶¶ 66-68). He maintains that release is the proper remedy for each of these claims. (*Id.* at 20). Respondents argue that Petitioner has failed to exhaust his administrative remedy before the Board of Immigration Appeals ("BIA") because Petitioner has not appealed the July 9, 2026 IJ bond denial. (Dkt. No.

[1] This information is from EOIR Automated Case Information for Petitioner. Dep't of Just., EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited Nov. 2, 2026).

7 at 2.) In the Reply, Petitioner argues that exhaustion is prudential, is not required because the exceptions of irreparable injury and agency delay apply, and is inappropriate because Petitioner is asserting a violation of his due process rights under the Fifth Amendment, which is beyond the jurisdiction of the immigration court and BIA. (Dkt. No. 8.)

**A. Jurisdiction**

As a preliminary matter, this Court has jurisdiction to review the IJ's bond decision. Congress has placed limits on federal courts' review of bond determinations under 8 U.S.C. § 1226. Specifically, § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." As such, § 1226(e) precludes a noncitizen from "challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (plurality) (citation modified).

However, federal courts retain jurisdiction to consider constitutional claims or questions of law regarding bond determinations, including "mixed questions" involving the application of law to facts. An immigration courts' determination that a noncitizen presents a danger or risk of flight is such a "mixed question" amenable to federal court review. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). Although what constitutes dangerousness or risk of flight "is malleable and involves agency discretion," dangerousness and risk of flight are "still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts.'" *Id.* (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). Thus, while the Court lacks jurisdiction over purely discretionary questions, Congress has not stripped this Court of jurisdiction over the issue presented here.

\\

\\

\\

**B. Administrative Exhaustion**

As another preliminary matter, the Court addresses exhaustion, as Respondents' sole argument in the Answer is that "Petitioner has failed to exhaust his administrative remedy before the BIA" because he had not appealed the IJ's decision to deny bond to the BIA. (Dkt. No. 7 at 3-4.) Specifically, Respondents assert that "Petitioner bears the burden of showing that an excuse for exhaustion applies." (*Id.* at 3 (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011).) However, Petitioner contends that exhaustion is not required because the exceptions of irreparable injury and agency delay apply and warrant waiving any prudential exhaustion requirement and asserts due process claims. (Dkt. No. 9 at 4.)

While the exhaustion requirement "is prudential, rather than jurisdictional, for habeas claims" such that a court may waive the requirement, courts may nevertheless require exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (*quoting Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Nonetheless, courts "have discretion to waive a prudential requirement" if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 998, 1000 (9th Cir. 2004).

Here, the Court finds that a waiver of the exhaustion requirement is warranted. The

Court finds that none of the *Hernandez* factors justify the Court to *require* exhaustion. 872 F.3d at 988. First, an appeal of the bond hearing and the BIA's expertise are not necessary to decide the questions at issue here—whether the Petitioner's detention and bond hearing violated due process. *See, e.g.*, *Moscui v. Semaia, No. 5:26-CV-05748-MBK*, 2026 WL 3027140, at *4 (C.D. Cal. Oct. 8, 2026) (finding that waiver of exhaustion was warranted where petitioner "raises legal and constitutional challenges to his arrest and detention that would not be before the BIA and, in any event, the BIA could not consider because it 'does not have jurisdiction to determine the constitutionality of the statutes it administers'" (quoting *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006)). Second, because Petitioner's habeas petition includes, *inter alia*, a due process claim, the administrative scheme is likely futile. Lastly, "[w]here the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026). Consequently, the Court exercises its discretion to forgo the exhaustion requirement in this case. *Laing*, 370 F.3d at 998.

### C. Due Process

Petitioner contends that his ongoing detention and July 9, 2026 bond hearing violate due process. (Dkt. No. 1 ¶¶ 50-65.)[2] Notably, Respondents do not dispute the procedural due process violations, defend the IJ's decision on the merits, or dispute that the IJ's flight risk determination was an abuse of discretion. Rather, their sole argument is administrative exhaustion.

\\

\\

[2] Petitioner additionally argues that his arrest without a pre-deprivation hearing violates due process, his arrest without a warrant violates 8 U.S.C. § 1226(a), and that his detention violates the Administrative Procedure Act (Dkt. No. 1.) However, since this Court has already concluded that Petitioner is entitled to release on his due process claim, the Court finds it unnecessary and inexpedient to address the remaining claims. *Huynh v. Marin*, No. 5:26-CV-02405-SP, 2026 WL 1772734, at *3 (C.D. Cal. June 16, 2026). Petitioner may raise these claims again if he is subject to any future detention.

*1. Mathews v. Eldridge*

The Fifth Amendment Due Process Clause provides that no person shall be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. Thus, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted). "In the context of civil immigration detention, the two 'regulatory goals' of the Immigration and Nationality Act provisions governing such detention—'ensuring the appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the community'—can provide such 'special justification.'" *Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (quoting *Zadvydas*, 533 U.S. at 690).

"In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). When determining what procedures are required by due process, courts weigh the three factors outlined in *Mathews v. Elridge*, 424 U.S. 319, 335 (1976)—(1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest. At a minimum, procedural due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Moreover, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

a. Private Interest

As to the first *Mathews* factor, Petitioner undoubtedly has a strong interest in remaining free from detention because Petitioner has been living in the United States for five years and has established significant community ties, as evidenced by the multiple letters of support provided on his behalf. (*See* Dkt. No. 1-4); *see also Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) ("[Petitioner] has been out of custody for nearly a year-and-a-half, and during that time, has lawfully worked fulltime, has become an active member of his community, and regularly volunteers at his temple. His detention denies him that freedom." (citations omitted)); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding that private interests can include the freedom to "be gainfully employed and . . . to be with family and friends and to form the . . . enduring attachments of normal life"). Moreover, Petitioner's interest in receiving a bond hearing that comports with due process is "fundamental." *Hernandez*, 872 F.3d at 993.

Thus, the first *Mathews* factor weighs strongly in Petitioner's favor.

b. Risk of Erroneous Deprivation

Turning to the second *Mathews* factor, the risk of erroneous deprivation of liberty is high where, as here, the Court ordered that Respondents provide Petitioner with a bond hearing, yet, when they did so, they failed to provide an interpreter. "It is long-settled that a competent translation is fundamental to a full and fair hearing." *Perez-Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir. 2000). As such, if a noncitizen does not speak English, "deportation proceedings must be translated into a language the [noncitizen] understands." *Id.*

Here, Petitioner alleges, and Respondents do not dispute, the following facts: Petitioner was present and represented by counsel at the bond hearing. (Dkt. No. 1 ¶ 60.) At the start of

the hearing, and before going on the record, IJ Marcus "asked counsel if she waived interpretation on behalf of Petitioner." (*Id.*) Petitioner's counsel "declined to waive interpretation and asked for a Spanish language interpreter to allow Petitioner to participate in the bond hearing." (*Id.*) IJ Marcus refused to provide an interpreter, "stating that he was not statutorily obligated to provide an interpreter for a bond hearing, and it would unnecessarily prolong the hearing." (*Id.*) Once on the record, IJ Marcus "attempted to state that Petitioner waived interpretation." (*Id.* ¶ 61.) Petitioner's counsel then "corrected [IJ Marcus], clarifying that Petitioner did not indeed waive interpretation. [IJ Marcus] indicated there was no statutory requirement for an interpreter and moved on with the bond hearing." (*Id.*) Because of the IJ's persistence, Petitioner and his counsel felt that they had no choice but to continue forward with the bond hearing without an interpreter, thereby preventing Petitioner from testifying on his own behalf and participating in and understanding his own bond hearing. (*Id.* ¶ 62.)

Failure to provide access to an interpreter for Petitioner, where Petitioner's counsel did not waive Petitioner's presence or full interpretation of the bond hearing, substantially elevated the risk of erroneous deprivation of Petitioner's liberty interest and interest in receiving a bond hearing that comports with due process. Contrary to the IJ's contention, it would not "unnecessarily prolong the hearing" to provide an interpreter such that Petitioner could meaningfully understand the proceedings against him; rather, it prevented Petitioner from having a "full and fair hearing." *Perez-Lastor*, 208 F.3d at 778; *see also Mangue v. Blanche*, No. 2:26-CV-00586-CDS-DJA, 2026 WL 1602517, at *4 (D. Nev. June 4, 2026) ("A detainee is entitled to a translator for all proceedings."). Other courts have similarly found that, where an interpreter was not provided for a petitioner's bond hearing, there was a due process violation. *See, e.g.*, *Musheer v. Larose*, No. 3:26-cv-01780-RBM-MSB, 2026 WL 2041674, at *5-6 (S.D. Cal. July 14, 2026) (finding that the risk of an erroneous deprivation of petitioner's liberty interest was increased where the IJ decided to translate for a petitioner in a bond hearing); *Nabiev v. Warden, FCI Lewisburg*, No. CV 3:26-904, 2026 WL 3122159, at *3 (M.D. Pa. Oct. 19, 2026) (finding a due process violation where the IJ failed to provide access to an

interpreter and failed to determine petitioner's level of English proficiency such that he "was deprived of a fair opportunity at the bond hearing to participate in the proceedings as they were occurring"); *A.D. v. Oddo*, Civ. Action No. No. 25-460J, 2026 WL 1251470, at *3 (W.D. Pa. Feb. 12, 2026) (finding a due process violation where petitioner, who had counsel at the bond hearing, was not provided an interpreter who was fluent in the dialect of his native language, which "led to misinterpretations and misunderstandings with respect to questions posed by the IJ to Petitioner, and in his responses thereto"); *see also Perez Diaz v. Mattos*, No. 2:26-CV-02262-MMD-DJA, 2026 WL 2983511, at *2 (D. Nev. Oct. 5, 2026) (finding that petitioner "is further entitled to relief based on his bond hearing because he was denied complete Spanish translations of the proceedings and the exhibits").

Moreover, Petitioner alleges she was present during the bond hearing and Petitioner's counsel stated both on and off the record that she refused to waive full interpretation of the bond hearing. (Dkt. No. 1 ¶¶ 60-61.) Thus, this case is meaningfully distinct from cases in which a petitioner brings a due process violation after their counsel waived petitioner's presence and/or full interpretation of the bond hearing. *See, e.g.*, *Esnilssen Ramos v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-05290-JLT-EPG, 2026 WL 2859584, at *4 (E.D. Cal. Sept. 23, 2026) (finding no procedural due process violation where petitioner was represented by counsel who waived full interpretation of the bond hearing (citing *Saldana Meza v. Warden, Golden State Annex Det. Facility*, No. 1:26-CV-01912-DJC-EFB, 2026 WL 1430934, at *3 (E.D. Cal. May 21, 2026))); *see also Troncoso-Oviedo v. Garland*, 43 F.4th 936, 941-42 (9th Cir. 2022) (holding no due process violation where the IJ did not directly question petitioner about his applications for alternative relief, which petitioner and his counsel had previously reviewed decided to waive, and "the IJ properly relied on counsel's representations"). The Court notes, however, that such a waiver does not necessarily end the inquiry as to whether due process rights were violated in failing to provide an interpreter. *See, e.g.*, *Said v. Noem*, No. 3:25-cv-938-MOC, 2026 WL 904295, at *11 (W.D.N.C. Apr. 2, 2026) (holding that, where counsel only waived an interpreter because he mistakenly believed it would violate a court

order, "[p]etitioner was prevented from being heard at a meaningful time and in a meaningful manner before he was denied bond or release on supervisory conditions and his liberty further restrained").

Thus, the second *Mathews* factor also strongly weighs in Petitioner's favor.

c. The Government's Interest

Finally, as to the third *Mathews* factor, "[t]he effort and cost required to provide Petitioner with procedural safeguards is minimal." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *see Qian Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (finding "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government" to be minimal). Indeed, custody hearings with interpreters in immigration court "are routine and impose a 'minimal' cost." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (quoting *Doe*, 787 F. Supp. 3d at 1094-95).

Thus, the third *Mathews* factor weighs in Petitioner's favor.

*2. Abuse of Discretion*

As noted above, Respondents have failed to defend the IJ's decision on the merits or dispute that the IJ's flight risk determination was an abuse of discretion. Considering Respondents' non-opposition, the Court readily concludes that the IJ abused its discretion by denying Petitioner's release as a flight risk. Under the abuse of discretion standard, the reviewing court determines whether the IJ "applied the correct legal standard" and may not "reweigh evidence." *Martinez*, 124 F.4th at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). An IJ "abuses its discretion when its decision is arbitrary, irrational, or

contrary to law," *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)), or "when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief." *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012) (quoting *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009)).

Petitioner's bond hearing was conducted pursuant to 8 U.S.C. § 1226(a). At a § 1226(a) bond hearing, if "the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Thus, the Court proceeds in determining whether the IJ abused its discretion by finding that Petitioner failed to show he is not a flight risk by a preponderance of the evidence.

Petitioners allege, and Respondents do not dispute, that the IJ, in an oral decision, found Petitioner was a flight risk because Petitioner entered the United States unlawfully, worked without authorization, and did not attempt to gain legal status until he was detained by immigration officials. (Dkt. No. 1 ¶ 21.)

Petitioner challenges the IJ's flight risk determination on the ground that the IJ did not meaningfully examine his established family ties, his eligibility for relief, his length of time in the United States, and his lack of criminal history. (*Id.* ¶ 64.) The Court agrees. While an IJ is not required "to discuss each piece of evidence submitted," "where there is any indication that the [IJ] did not consider all of the evidence before it," such as "failing to mention highly probative or potentially dispositive evidence," an IJ's general statement that it considered all the evidence is insufficient. *Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011). "In particular, where potentially dispositive testimony and documentary evidence is submitted, the [IJ] must give reasoned consideration to that evidence." *Id.*; *Martinez*, 124 F.4th at 785. Here,

Petitioners allege, and Respondents do not dispute, that the IJ did not discuss the evidence of Petitioner's family and community ties, his time in the United States since his entry, and his lack of criminal history, even though such factors are central to a flight risk determination. *See Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (instructing that IJs may consider, among other factors, "(1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States . . . (6) the [noncitizen's] criminal record"). Accordingly, the Court finds the IJ failed to "show proper consideration of all factors when weighing equities and denying relief." *An Na Peng*, 673 F.3d at 1253.

Petitioners further allege, and Respondents do not dispute, that the flight risk factors that the IJ cited do not explain how these factors could outweigh the substantial evidence that Petitioner presented. The IJ relied on Petitioner's unlawful entry and unauthorized work as flight risk factors. (Dkt. 1 ¶ 63.) But this Court finds, as have other courts, that "no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not." *Pedro v. Mullin*, No. 5:26-CV-04303-MBK, 2026 WL 2677303, at *6 (C.D. Cal. Sept. 11, 2026) (collecting cases and quoting *Lemus Crispin v. Bondi*, 832 F. Supp. 3d 534, 545 (E.D. Va. 2026)); *Villa v. Mullin*, 834 F. Supp. 3d 957, 962 (C.D. Cal. 2026) (same). "Rather, steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed." *Pedro*, 2026 WL 2677303, at *6 (C.D. Cal. Sept. 11, 2026) (quoting *Lemus Crispin*, 832 F. Supp. 3d at 545).

"[U]unauthorized employment is inextricably related to the unlawful status that has caused [the petitioner's] detention and request for a bond hearing in the first place." *Pedro*, 2026 WL 2677303, at *7 (quoting *Lemus Crispin*, 832 F. Supp. 3d at 545). "If an [IJ] could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's unlawful status—discretionary detention under § 1226(a) . . . would become a de facto mandatory § 1225 detention." *Pedro*, 2026 WL 2677303, at *7 (quoting *Lemus Crispin*,

832 F. Supp. 3d at 545). "A 'bond hearing fails to comport with due process where an [IJ] relies on considerations that would lead to an automatic denial of bond in all cases.'" *Pedro*, 2026 WL 2677303, at *7 (quoting *Lemus Crispin*, 832 F. Supp. 3d at 545).

Thus, considering the above, and in light of Respondent's non-opposition, this Court finds that the IJ abused its discretion by denying Petitioner's release on the basis that he poses a flight risk.

**E. RELIEF**

Petitioner seeks his immediate release, or alternatively, a bond hearing. A district court has equitable discretion "as law and justice require" in remedying unlawful detention in habeas petitions. *Ramirez Brown v. Davenport*, 596 U.S. 118, 127-28 (2022); *see also Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief.").

Petitioner has been detained for nearly seven months. Immediate release is warranted here because this Court found that each of the three *Mathews* factors weigh in Petitioner's favor and that the IJ abused its discretion by denying Petitioner's release as a flight risk, and, moreover, Respondents have not defended the IJ's decision on the merits. *See, e.g.*, *A.D.*, 2026 WL 1251470, at *3 (W.D. Pa. Feb. 12, 2026) (ordering release where petitioner was not provided a bond hearing with an interpreter); *Pedro*, 2026 WL 2677303, at *7 (ordering release where the IJ erred in denying release solely on flight risk grounds and respondents did not defend that decision on the merits); *Perez Diaz*, 2026 WL 2983511, at *3 (ordering release where the court found that petitioner's previous bond hearing was inadequate, the finding of dangerousness was an abuse of discretion, and the government sought to remove petitioner to a third country without adequate process); *Kumar v. Warden of the Golden State Annex Det. Facility*, No. 1:26-CV-00035, 2026 WL 2078191, at *6 (E.D. Cal. July 17, 2026) (collecting

cases where courts ordered petitioner's immediate release after an IJ provided petitioner with a legally inadequate bond hearing). Accordingly, this Court finds that release is the appropriate remedy.

## IV. CONCLUSION

For the reasons discussed above, the Petition is **GRANTED**. **IT IS ORDERED** that Respondents shall **immediately release** Petitioner Grebil Avila Medina (A-Number 246-061-551) from custody. Respondents shall file a notice within three (3) days of this Order confirming Petitioner's release. **IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner without notice and a meaningful opportunity to be heard before a neutral decisionmaker.[3] Judgment will be entered accordingly.

DATED: November 3, 2026

Karen L. Stevenson

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

[3] Petitioner also requests an award of costs and attorney fees. (Dkt. No. 1 at 20-21.) Any request for costs and fees must be filed separately and in accordance with the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.